

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

**FILED**

**August 02, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 1:05 P.M.**

| | |
|---|---|
| Annette Frye | ) Docket No. 2016-06-0327 |
| | ) |
| v. | ) State File No. 4185-2016 |
| | ) |
| Vincent Printing Co., et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Thomas Wyatt, Judge | ) |

---

**Affirmed in Part, Vacated in Part,
and Remanded - Filed August 2, 2016**

---

In this interlocutory appeal, both parties appeal the trial court's order awarding medical benefits and some temporary disability benefits. The employee alleges she sustained injuries after a workplace chemical exposure caused her to become dizzy and fall. The employer denied the claim on the basis that the fall was idiopathic and, therefore, not compensable. Following an expedited hearing, the trial court ordered the employer to provide medical benefits, pay bills related to emergency room treatment, and pay some temporary disability benefits. The employer appealed, arguing the trial court erred in determining the employee's injury was not idiopathic and in ordering benefits. The employee also appealed, asserting she is entitled to additional temporary disability benefits. Having carefully reviewed the record, we affirm the trial court's decision in part, vacate in part, and remand the case for further proceedings as may be necessary.

Judge Timothy W. Conner delivered the opinion of the Appeals Board, in which Judge Marshall L. Davidson, III, and Judge David F. Hensley joined.

Ronald J. Berke, Chattanooga, Tennessee, for the employee-appellant, Annette Frye

Gordon C. Aulgur, Lansing, Michigan, for the employer-appellee, Vincent Printing Co.

## Factual and Procedural Background

Annette Frye ("Employee"), a fifty-six-year-old resident of Hamilton County, Tennessee, alleges she suffered injuries arising primarily out of and in the course and scope of her employment with Vincent Printing Company ("Employer"). Employee testified her primary job was to operate the "welding tape machine," which required monitoring to ensure the product was being manufactured and handled appropriately. Additionally, she was tasked with cleaning the "clip machine" with a substance called denatured alcohol. Employee testified that the smell of the denatured alcohol was strong and that she asked for a mask to wear while using it. Her supervisor refused to provide her a mask and, while she was cleaning the clip machine, she began experiencing shortness of breath, coughing, and difficulty breathing, which she attributed to inhaling fumes from the denatured alcohol. She went outside to get fresh air and noticed an improvement in her symptoms. After retrieving an inhaler from her vehicle, which she testified she used occasionally when she experienced shortness of breath due to pollen exposure or excessive heat, she reentered the workplace. When Employee resumed cleaning the machine, she again experienced tightness in her chest and difficulty breathing. To alleviate her symptoms, she used her inhaler.

Employee testified that in order to adjust the machine on which she was working, she had to lean over. As she stood up, she experienced dizziness, which caused her to lose her balance and fall. Employee stated that, when she felt herself begin to fall, she tried to catch herself, resulting in her falling against the machine and striking the right side of her body and her head. An ambulance was summoned, and Employee was transported to Parkridge East Hospital Emergency Department ("Parkridge"). The report from Hamilton County EMS reflects Employee complained to the first responders that she felt dizzy from exposure to cleaning chemicals just before she fell.

At Parkridge, the attending provider noted Employee had fallen just prior to arrival and complained of pain in her arm, back, and hip. X-rays of her hip and back revealed no acute injuries, and she was diagnosed with a contusion to her hip and lumbar strain. She was prescribed medications and given an excuse from work for January 14, 2016 through January 17, 2016.

Employer provided Employee a panel of physicians, and Employee chose Dr. Terry Smith, whom she first saw on January 26, 2016. She told Dr. Smith she was injured when the smell of denatured alcohol she was using to clean machinery caused her to become dizzy and fall. She stated the smell was very strong, and she experienced shortness of breath. She described hitting her head and the right side of her back and hip. Although the pain in her head had resolved, she continued to suffer pain in her right lower back. Dr. Smith assigned restrictions of occasional lifting of ten pounds or less, pushing and pulling of ten pounds or less, occasional bending at the waist, and no

2

squatting or kneeling. He also instructed her to be cautious driving and "working around machinery" while taking certain medications, and he referred her to physical therapy.

On February 1, 2016, Employee completed an "Employee's Report of Injury" for Employer's workers' compensation insurer, stating that the "fumes made [her] dizzy and fall over." She indicated she needed her inhaler on the day of the fall due to shortness of breath. She returned to Dr. Smith on February 8, 2016 with ongoing complaints of back pain. She reported little improvement over the course of three weeks and indicated that, although Employer attempted to return her to work, the job did not comply with the restrictions assigned at the January 26, 2016 appointment. Dr. Smith continued the restrictions he had previously assigned and again referred Employee for physical therapy.

Employee returned to Dr. Smith several weeks later with continuing complaints of pain and stiffness. Dr. Smith noted that he had personally faxed the referral for physical therapy to the adjuster and had received confirmation that the fax had successfully transmitted, but the physical therapy still had not been approved. He indicated his intent to resubmit the request for physical therapy and continued Employee's restrictions.

On February 29, 2016, Employer sent correspondence to Employee indicating that it had offered her light duty work within her restrictions, and that she had declined the offer. At the expedited hearing, Employee testified she understood the offer of employment to be a return to her usual job, which was outside her restrictions, and she therefore declined to attempt the work. Employer's representative testified he had spoken to Employee to offer her the modified work and had indicated to her that the job would be within her restrictions. He further testified he was going to allow her to perform her job seated in a chair and would instruct other employees to assist her as needed with the portions of the job that fell outside her restrictions.

Employee last saw Dr. Smith on March 7, 2016, at which time she reported she experienced a significant flare-up of her back pain while changing the sheets on her bed. She went to the emergency room and received medication for the flare-up. She told Dr. Smith that Employer still had not approved the recommended physical therapy and that she still had pain on a daily basis. Dr. Smith noted that several attempts to schedule physical therapy with the adjuster had gone unanswered and indicated that he would, again, seek approval for physical therapy. He also encouraged Employee to contact the adjuster herself. He continued the previously assigned restrictions and, on the "Statement of Activity Work Status," made the notation "[s]till no PT approval! Needs PT B4 returns."

Thereafter, Employer denied the claim in its entirety, asserting that Employee's injuries did arise out of or within the scope of employment and resulted from an idiopathic fall. Employee filed a petition for benefit determination, and after unsuccessful mediation and the issuance of a dispute certification notice, Employee filed

a request for an expedited hearing. Following a May 24, 2016 hearing, the trial court determined that Employee had presented sufficient evidence to establish she would likely succeed on the merits of her claim with respect to medical benefits and temporary disability benefits from January 15, 2016 to February 22, 2016. The court denied Employee's request for temporary disability benefits from February 22, 2016 to the present, finding Employee had not presented sufficient evidence to establish entitlement to those benefits. Both parties appealed.

## Standard of Review

The standard of review to be applied by this Board in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2015). The trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)     Violate constitutional or statutory provisions;
(B)     Exceed the statutory authority of the workers' compensation judge;
(C)     Do not comply with lawful procedure;
(D)     Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion; or
(E)     Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

## Analysis

On appeal, Employer asserts that the trial court erred in awarding medical and temporary disability benefits because Employee's injuries were the result of an idiopathic fall. Employee asserts that the trial court erred in denying temporary disability benefits from February 22, 2016 to the present.

*Employer's Appeal*

Employer argues that the trial court's reliance on our prior decision in *McCaffery v. Cardinal Logistics*, No. 2015-08-0218, 2015 TN Wrk. Comp. App. Bd. LEXIS 50 (Tenn. Workers' Comp. App. Bd. Dec. 10, 2015), was misplaced. Specifically, Employer asserts that the trial court "failed to establish a condition of [Employee's]

4

employment which presented a peculiar hazard or additional hazard and how this condition created a risk of injury which was the immediate cause of Employee's injuries." While we agree with the trial court's determination that Employee came forward with sufficient evidence to show she is likely to prevail at a hearing on the merits of her claim, we arrive at that conclusion by a rationale somewhat different than that of the trial court.

It is well-settled that an injured worker has the burden of proof on every essential element of his or her claim. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). However, at an expedited hearing, an employee need not prove every element of his or her claim by a preponderance of the evidence but must come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits consistent with Tennessee Code Annotated section 50-6-239(d)(1) (2014). *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan*, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6.

Furthermore, there is a presumption "that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2015). Determining where the preponderance of the evidence lies requires that we carefully weigh the trial court's factual findings and conclusions. *See Carter v. Volunteer Apparel, Inc.*, 833 S.W.2d 492, 494 (Tenn. 1992).

In Tennessee, a compensable injury is "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment." Tenn. Code Ann. § 50-6-102(14) (2015). An injury is accidental if it is "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-201(14)(A). "An idiopathic injury is one that has an unexplained origin or cause, and generally does not arise out of the employment unless 'some condition of the employment presents a peculiar or additional hazard.'" *Veler v. Wackenhut Servs.*, No. E2010-00965-WC-R3-WC, 2011 Tenn. LEXIS 78, at *9 (Tenn. Workers' Comp. Panel Jan. 28, 2011) (quoting *Shearon v. Seaman*, 198 S.W.3d 209, 215 (Tenn. Ct. App. 2005)). Moreover, an injury resulting from an idiopathic condition is compensable "if an employment hazard causes or exacerbates the injury." *Phillips v. A&H Constr. Co.*, 134 S.W.3d 145, 148 (Tenn. 2004). "Cause" in this context

5

is not "proximate cause" as used in the law of negligence; rather, "cause" means that the accident originated in the hazards to which the employee was exposed as a result of performing his or her job duties. *Id.* at 150.

In the present case, Employer's primary argument is that Employee's use of her inhaler "was just as likely to have caused her dizziness as the denatured alcohol." Thus, in Employer's view, these "equally likely" scenarios render it unlikely that Employee will prove the compensability of her injury at a trial on the merits. Employer's argument is unpersuasive for two reasons. First, Employer fails to take into account Employee's unrefuted testimony that her use of the inhaler in this instance was, itself, the result of the alleged chemical exposure. Employee specifically testified that after she experienced symptoms while using the denatured alcohol, she went to her car to retrieve her inhaler. Thus, whether her dizziness was caused by the exposure directly, or was caused by her use of an inhaler due to symptoms resulting from the exposure, both circumstances are sufficiently related to a particular work hazard, i.e., the use of denatured alcohol to clean the machine, to support an order for benefits at this interlocutory stage.

Second, as we explained in *McCaffery*, the relevant inquiry is not what caused the alleged idiopathic condition or event, but what caused *the injury*. In *McCaffery*, the employer argued that a sneeze of unknown origin caused the motor vehicle accident which resulted in the employee's injuries. *McCaffery*, 2015 TN Wrk. Comp. App. Bd. LEXIS 50, at *4-5. Thus, in the employer's view, the accident was idiopathic and not compensable. *Id.* at *8. We rejected that argument, explaining that "[t]he focus is on the causal link between the employment and the accident or injury, rather than a causal link between the employment and the idiopathic episode." *Id.* at *11. "[A]n accidental injury arises out of employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." *Phillips*, 134 S.W.3d at 151. Here, Employee testified that, when she became dizzy after her exposure to denatured alcohol, she lost her balance and fell against the machine on which she was working. Although Employer attempted to discredit that testimony on cross-examination, Employee's testimony was consistent throughout the hearing and the trial court accepted that testimony. Employer presented no evidence to the contrary on this point.

Employer offered what it views as an alternative theory as to what caused Employee's dizziness and her resulting injury. Yet, Employee presented sufficient evidence that her injury was causally related to symptoms resulting from the use of denatured alcohol in the course and scope of her employment. Under the facts presented, it does not change the outcome even if Employee's dizziness was caused by her use of an inhaler rather than the chemical exposure itself since the use of the inhaler was causally related to the occupational exposure. Thus, as in *McCaffery*, we find that Employee came forward with sufficient evidence at the expedited hearing to establish that she will likely prove a compensable injury at a hearing on the merits.

6

Employee contends she is entitled to ongoing temporary disability benefits as of February 22, 2016. The trial court ordered temporary disability benefits from January 15, 2016 through February 22, 2016, reasoning that Dr. Smith's prescription for narcotics during that time period supported Employee's assertion that she was unable to work the light duty position offered by Employer. However, the trial court denied temporary disability benefits after that date, as Employee was no longer being prescribed narcotic medications and Employer's representative testified he had offered Employee a job within her restrictions.

An injured worker may be entitled to temporary partial disability benefits when the temporary disability resulting from a work-related injury is not total. *See* Tenn. Code Ann. § 50-6-207(1)-(2) (2015). As the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel observed, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005). Temporary restrictions assigned by physicians during an injured worker's medical treatment do not establish an entitlement to continued temporary disability benefits if the employee is able to work without loss of income. *See Long v. Mid-Tenn. Ford Truck Sales*, 160 S.W.3d 504, 511 (Tenn. 2005); *Vinson v. Firestone Tire and Rubber Co.*, 655 S.W.2d 931, 933 (Tenn. 1983).

Whether an employee is entitled to temporary partial disability benefits even after a light duty job offer has been made hinges on the reasonableness of the employer's action in offering a light duty position and the reasonableness of the employee in declining the offer. *See, e.g., Kelley v. D & S Residential Holdings*, No. E2011-02392-WC-R3-WC, 2012 Tenn. LEXIS 632 (Tenn. Workers' Comp. Panel Sept. 4, 2012) (employee not entitled to temporary partial disability benefits where employee made no good faith effort to return to work despite employer's willingness to provide work within employee's restrictions); *cf. Williams*, 2005 Tenn. LEXIS 1032 (injured worker was entitled to temporary disability benefits where she made a good faith effort to return to work but the employer did not provide work within her restrictions). This analytical framework is similar to the consideration of whether an employee has made a "meaningful return to work." With respect to that issue, the Tennessee Supreme Court observed:

> There will be a variety of factual situations wherein the courts will be required to construe the meaning of the words [meaningful return to work]. The ultimate resolution of their meaning will be leavened by an assessment of the reasonableness of the employer in attempting to return the employee to work and the reasonableness of the employee in failing to return to work.

*Newton v. Scott Health Care Ctr.*, 914 S.W.2d 884, 886 (Tenn. Workers' Comp. Panel Dec. 15, 1995). If an injured worker is unable to continue working because of the injury, there will not have been a meaningful return to work in most circumstances. "However, if the employee returns to work and sometime thereafter stops working due to personal reasons or other reasons not related to the work injury, then such circumstances are considered as making a meaningful return to work in the sense of our statute." *Suits v. Mars*, No. E2004-02368-WC-R3-CV, 2005 Tenn. LEXIS 823, at *10-11 (Tenn. Workers' Comp. Panel Oct. 5, 2005). Moreover, an employee's subjective belief that she will be unable to perform the assigned job duties, standing alone, is "not a reasonable basis upon which to award disability benefits." *Kelley*, 2012 Tenn. LEXIS 632, at *30. Ultimately, "[t]he resolution of what is reasonable must rest upon the facts of each case and be determined thereby." *Newton*, 914 S.W.2d at 886.

Here, the trial court found Employee's refusal to attempt the light duty work unreasonable. Although Employee testified she believed the job Employer offered was beyond her medical restrictions, Employer's testimony that it would have provided assistance to Employee to accommodate her restrictions was uncontroverted. To the extent that the findings and conclusions on this point are based upon the trial court's assessment of the witnesses' credibility, the trial court's factual findings are entitled to great deference. *See Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008). We find insufficient evidence in the record to overturn the trial court's credibility determinations.

In sum, Employee's refusal to attempt the light duty job deprived Employer of the opportunity to provide modified duty within the medical restrictions assigned by the treating physician. The preponderance of the evidence supports the trial court's conclusion that Employee's refusal to accept Employer's offer of light duty work was unreasonable, and the denial of temporary disability benefits after February 22, 2016 is affirmed.

### *Findings of Compensability*

Before concluding, we are compelled to address several of the trial court's findings. After analyzing the relevant testimony regarding what caused Employee's fall, the trial court concluded "her injury arose primarily out of and in the course and scope of employment." Thereafter, the trial court determined that "it was unnecessary for [Employee] to establish by expert medical opinion why she fell." In addition, the trial court repeatedly stated that Employee "will prevail" at a hearing on the merits. Such findings are premature at the expedited hearing stage. Pursuant to Tennessee Code Annotated section 50-6-239(d)(1), the standard of proof at an expedited hearing is whether an employee "*would likely* prevail at a hearing on the merits." Tenn. Code Ann. § 50-6-239(d)(1) (2015) (emphasis added). At an interlocutory stage of the process, neither party is required to offer the extent of its evidence or present its final case. Typically, discovery is not complete at the time an expedited hearing occurs. Moreover,

8

any interlocutory order is subject to revision at any time prior to a final judgment in the case. *See* Tenn. R. Civ. P. 54.02. Thus, it is inappropriate to include findings in an expedited hearing order that appear to resolve ultimate issues in a case, especially a finding that one party or the other "will prevail" at trial.

Furthermore, although an employee may present sufficient evidence at an expedited hearing to support an order for medical benefits prior to trial, such a finding does not relieve an employee of his or her ultimate burden of proof at a hearing on the merits. Tennessee Code Annotated section 50-6-102(14) makes clear the employee has the burden of proving by a preponderance of the evidence that the employment "contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B) (2015). In addition, such proof must be "to a reasonable degree of medical certainty," which means that, "*in the opinion of the physician*, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(C)-(D) (emphasis added). Thus, to the extent the trial judge suggested that Employee need not establish at a final hearing on the merits that her injury is causally related to her employment by expert medical opinion, such a finding was error. *See Sirkin v. Trans Carriers, Inc.*, No. 2015-08-0292, 2016 TN Work. Comp. App. Bd. LEXIS 22, at *7 (Tenn. Workers' Comp. App. Bd. May 9, 2016) ("to the extent the trial court found that Employee's claim is compensable at this stage of the case, that finding is premature and, as such, is vacated"). Therefore, those portions of the expedited hearing order indicating that Employee has satisfied her burden of proving a compensable injury by a preponderance of the evidence and those portions indicating that she "will prevail" at trial must be vacated.

## Conclusion

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's decision to award medical benefits and certain temporary disability benefits and to deny other temporary disability benefits at this interlocutory stage of the case. To the extent that the expedited hearing order suggests that Employee has proven a compensable injury by a preponderance of the evidence, the order is vacated. The case is remanded for any further proceedings that may be necessary.

Timothy W. Conner, Judge
Workers' Compensation Appeals Board

9



**FILED**

**August 02, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 1:05 P.M.**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Annette Frye | ) | Docket No. 2016-06-0327 |
| | ) | |
| v. | ) | |
| | ) | State File No. 4185-2016 |
| Vincent Printing Co., et al. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 2nd day of August, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Ronald J. Berke | | | | | X | ronnie@berkeattys.com; margo@berkeattys.com |
| Gordon C. Aulger | | | | | X | gordon.aulgur@accidentfund.com |
| Thomas Wyatt, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

*Matthew Salyer*

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov