IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 14, 2005 Session

## NORMA E. SHEARON v. JACK E. SEAMAN

**An Appeal from the Circuit Court for Davidson County
No. 03C-1357      Barbara Haynes, Circuit Judge**

**No. M2004-01814-COA-R3-CV - Filed December 16, 2005**

This is a legal malpractice action.  The client filed this lawsuit against her former attorney, asserting legal malpractice for his failure to re-file a lawsuit under the Tennessee Workers' Compensation Act within one year after he took a voluntary non-suit of the lawsuit.  The trial court granted the former attorney's motion for summary judgment, finding the client's evidence in the underlying workers' compensation action insufficient to establish the damages element of the legal malpractice action. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., AND DAVID R. FARMER, J. joined.

Larry L. Roberts, Nashville, Tennessee, and Catherine Hughes, Nashville, Tennessee, for the appellant, Norma E. Shearon.

Fred C. Statum, III, Nashville, Tennessee, for the appellee, Jack E. Seaman.

**OPINION**

On May 8, 2003, Plaintiff/Appellant Norma E. Shearon ("Shearon") filed a legal malpractice lawsuit against Defendant/Appellee attorney Jack E. Seaman ("Seaman").  Shearon's complaint alleged that Seaman failed to timely re-file a suit for workers' compensation benefits arising from the death of her husband, Thomas Shearon, and that Seaman's failure to do so resulted  in Shearon being deprived of those benefits.  Seaman's answer denied that Shearon was entitled to workers' compensation benefits and asserted, as an affirmative defense, that Shearon was unable to state a claim upon which relief could be granted.

A legal malpractice action such as this requires, in essence, a trial within a trial.  To maintain a viable malpractice action against Seaman, Shearon initially needed to demonstrate that, absent any intervening malpractice, she would have recovered damages in the underlying workers'

compensation action. Thus, we first review Shearon's worker's compensation claim, and then the resulting legal malpractice lawsuit.

Shearon's husband, Thomas Shearon ("Decedent"), was found dead at his place of employment on the morning of November 18, 1997. There were no known witnesses to his death. The death certificate listed the immediate cause of death as severe head and chest injuries. In a section of the death certificate titled "[o]ther significant conditions contributing to death but not resulting in the underlying cause [severe head and chest injuries]" the death certificate noted that the Decedent had artherosclerotic and hypertensive cardiovascular disease.

Dr. Emily Wofford Ward ("Dr. Ward") performed an autopsy on the Decedent. The autopsy noted that the Decedent sustained a severe head injury with a skull fracture and a cerebral edema. The Decedent also had a fracture of the left sixth rib.[1] The autopsy noted as well that the Decedent suffered from severe coronary disease and hypertensive cardiovascular disease. The autopsy specified the cause of death as "severe head and chest injuries," and listed the manner of death as an "accident." Hypertensive and artherosclerotic cardiovascular disease were listed as contributory conditions.

Following the Decedent's death, Seaman was hired to represent Shearon to recover death benefits in a workers' compensation action. Accordingly, Seaman filed a lawsuit on Shearon's behalf to recover workers' compensation benefits. After discovery and prior to trial, Seaman became convinced that he could not get a satisfactory result in the worker's compensation lawsuit. Consequently, just six days before trial, Seaman took a voluntary non-suit. He did not re-file the lawsuit. The parties dispute whether Seaman agreed to re-file the suit on Shearon's behalf within the one-year limitations period. In July 2002, Seaman told Shearon that it was too late to re-file the worker's compensation action.

Shearon took the position that Seaman had negligently failed to timely re-file the workers' compensation suit after taking the non-suit. Consequently, Shearon filed the instant legal malpractice lawsuit against Seaman on May 8, 2003. Seaman denied any legal malpractice and denied that Shearon would have recovered any death benefits in the underlying worker's compensation action.

In the course of discovery, Seaman propounded interrogatories to Shearon. Of particular relevance to this appeal, were two of Seaman's inquiries: "1. Do you allege that Thomas J. Shearon's death arose out of and in the course and scope of his employment . . . ? 2. If the answer to the preceding interrogatory is yes, please set forth with specificity any and all facts, knowledge, information and sources of the same upon which you rely. . . ." Shearon responded:

---

[1] In a deposition administered six years after the autopsy, Dr. Ward testified that the chest injuries could have been the result of vigorous CPR in an effort to resuscitate the Decedent.

The autopsy report prepared by [Dr. Ward] states the cause of death as 'severe head and chest injuries' and the Certificate of Death issued by the Metropolitan (Nashville and Davidson County) Health Department lists the cause of death as 'severe head and chest injuries' from an accident at work.

On December 4, 2003, Seaman filed a motion for summary judgment. As grounds for the motion, Seaman asserted that Shearon's proof, as a matter of law, was insufficient to establish that the Decedent's death arose out of and in the course and scope of his employment. Consequently, Seaman argued, Shearon could not establish that she suffered any damage by virtue of Seaman's alleged negligence in failing to re-file the workers' compensation action.

To support the motion for summary judgment, Seaman relied on numerous undisputed facts. First, Seaman noted that the Decedent was found dead at his place of employment, with no known witnesses to his death. Second, Seaman was hired to represent Shearon in the subsequent lawsuit for the collection of workers' compensation benefits. Third, an order of voluntary non-suit was entered on May 10, 2001, and Seaman did not re-file the lawsuit. Finally, Seaman relied on Shearon's response to his interrogatory, detailed *supra*.

In addition, Seaman attached an affidavit from Dr. Ward, the physician who performed the autopsy on the Decedent. Dr. Ward's affidavit "clarified" that, in Dr. Ward's "opinion to within a reasonable degree of medical certainty[, the Decedent's] death was not caused by any risk, hazard or incident related to his employment." Dr. Ward cautioned against any reliance upon her autopsy report as conclusive proof that the Decedent died from work-related injuries.

On February 6, 2004, Shearon filed a response to Seaman's motion for summary judgment, arguing, *inter alia*, that the trial court should infer, based on the fact that the Decedent was at work at the time of his death, that the Decedent was engaged in his employment when his injuries occurred. Shearon maintained that the fact that the Decedent was at work at the time of his death, in and of itself, was sufficient to create a question of fact.

After Shearon filed her response to Seaman's motion for summary judgment, she took Dr. Ward's deposition. In the deposition, Dr. Ward testified about the injuries she observed while performing the Decedent's autopsy. In Dr. Ward's opinion, the Decedent was likely unconscious before he fell. To support this theory, Dr. Ward relied upon numerous physical conditions including, but not limited to, the absence of any injuries indicative that the Decedent tried to catch himself as he fell, as well as the existence of severe heart disease. Ultimately, Dr. Ward explained, it was difficult to determine in the autopsy if a cardiac event, such as an arryhthmia, was the cause of death. However, Dr. Ward felt that it was reasonable to conclude that the Decedent's severe heart disease might have been the cause of death. Nevertheless, Dr. Ward thought it more prudent, and ultimately more supported by the evidence, to list the cause of death in the autopsy as a brain edema suffered from some form of trauma. Because they lacked medical evidence indicating that the Decedent's heart disease was the actual cause of death, and in light of the existence of skull fractures and the

brain edema, Dr. Ward explained, she felt it was appropriate for her to classify the cause of death in the autopsy report as an accident.

Subsequently, Shearon filed a supplemental response to Seaman's motion for summary judgment. Attached to her supplemental response was an affidavit from another physician, K. P. Channabasappa, M.D. ("Dr. Channabasappa"). Much of Dr. Channabasappa's affidavit was devoted to analyzing Dr. Ward's findings and opinions. Dr. Channabassapa essentially agreed with Dr. Ward's testimony to the effect that the brain edema was the likely cause of death, and that the edema likely occurred as the result of a fall. Dr. Channabasappa agreed that, while heart disease may have contributed to the situation, any conclusion that the heart disease was the cause of death would require speculation.

In an order dated May 13, 2004, the trial court found the affidavit of Dr. Channabasappa insufficient as a matter of law to raise a genuine issue of material fact and therefore granted Seaman's motion for summary judgment. However, the trial court essentially gave Shearon another chance, permitting her to file an additional medical affidavit for the purpose of raising a genuine issue of material fact. The trial court said that the order granting summary judgment would not become effective until the court made a final determination as to the sufficiency of any supplemental affidavits.

Pursuant to the trial court's order, Shearon filed a second affidavit from Dr. Channabasappa. In the supplemental affidavit, Dr. Channabasappa again agreed with Dr. Ward that the brain edema and skull fracture were lethal, and that the head injuries were best characterized as the actual cause of death. There were some disagreements between the experts, however. Dr. Channabasappa disagreed with Dr. Ward's theory that the Decedent probably suffered a cardiac event which, in turn, caused a fall, again maintaining that such a conclusion was speculative. Dr. Channabasappa asserted that the Decedent must have "suffered an accidental fall in the course of his employment . . . struck his head on a solid object, most likely the floor at his place of employment." Dr. Channabasappa offered no medical or physical evidence to establish the cause of the alleged "accidental fall," or any connection between the Decedent's employment and the injury, apart from the fact that the fall occurred at work.

After considering the supplemental affidavit, in an order dated June 25, 2004, the trial court made effective the grant of summary judgment to Seaman. The trial court found that Shearon's second affidavit from Dr. Channabasappa was again insufficient to raise a genuine issue of material fact.

Shearon now appeals, raising three issues. First, Shearon asserts that the trial court erred in granting summary judgment because there was conflicting medical proof as to causation. Shearon asserts that the trial court in essence accepted Seaman's theory that the Decedent died from a fall caused by a sudden heart arrhythmia. Shearon also contends that the trial court erroneously granted summary judgment despite her allegation that Seaman improperly investigated the underlying workers' compensation case.

-4-

The standards governing the appellate review of a grant of summary judgment are well settled. Summary judgment is only appropriate when the facts and the legal conclusions from those facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Because the trial court's grant of summary judgment involves only questions of law, there is no presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). As a consequence, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

The summary judgment process is designed to promote efficiency in the judicial system, to enable the trial court to "pierce the pleadings to determine whether the case justifies the time and expense of a trial." *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). Courts at every level must exercise great care to not allow summary judgment to substitute for the trial of material factual issues. *Id.* Under the Tennessee Rules of Civil Procedure, a motion for summary judgment must be supported by a clear and concise statement of the material facts which the moving party asserts are undisputed. Tenn. R. Civ. P. 56.03. Moreover, under Rule 56.05, in response, the nonmoving party must allege facts with specificity in order to demonstrate that the grant of summary judgment is improper. Tenn. R. Civ. P. 56.05.

Rule 56.04 of the Tennessee Rules of Civil Procedure provides that summary judgment is appropriate where: (1) there is no genuine issue as to any material fact; and, (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Byrd*, 847 S.W.2d at 210; *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993). The concept of materiality is pivotal; the focus should be limited to only those facts that are material. *Byrd*, 847 S.W.2d at 211. Material facts are those which are indispensable to the resolution of a claim or defense. *Id.*

In determining whether a genuine issue of material fact exists, the court must adopt the strongest legitimate view of the evidence in favor of the nonmoving party, consider all reasonable inferences in favor of the nonmoving party, and discard countervailing evidence. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Byrd*, 847 S.W.2d at 210-11. The moving party bears the burden of demonstrating that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Bain*, 936 S.W.2d at 622; *Byrd*, 847 S.W.2d at 211; *Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991). Once this burden is met, the nonmoving party must then show that there is a genuine issue of material fact, and that disposition of the case without a trial would be improper. *Byrd*, 847 S.W.2d at 211.

To state a prima facie cause of action for legal malpractice, Shearon must establish: (1) that Seaman owed a duty to Shearon; (2) a breach of that duty; (3) that Shearon suffered damages as a result of that breach; (4) that Seaman's breach was the factual cause of those damages; and, (5) that Seaman's breach was the proximate, or legal, cause of Shearon's damages. *Gibson v. Trant*, 58 S.W.3d 103, 108 (Tenn. 2001). Shearon bears the burden of proving each element of the malpractice cause of action. *Id.*

In order to prove damages in a legal malpractice action, a plaintiff must prove that he would have obtained relief in the underlying lawsuit, but for the attorney's malpractice; consequently, the trial of a legal malpractice claim becomes, in effect, a "trial within a trial." *See id.* Here, the trial court granted summary judgment based on its conclusion that there were no genuine issues of material fact and Shearon could not demonstrate that she was entitled to relief in the underlying worker's compensation claim. Therefore, we must examine what Shearon was required to prove in order to obtain relief in the worker's compensation lawsuit, and the evidence considered by the trial court.

For a personal injury or accidental death to be compensable under Tennessee's Workers' Compensation Act, the claimant must establish two elements: (1) the injury arose out of the employment, and (2) the injury occurred in the course of employment. Tenn. Code Ann. § 50-6-103(a); *see*, *e.g.*, ***Phillips v. A&H Construction Co., Inc.***, 134 S.W.3d 145, 150 (Tenn. 2004). The "in the course of employment" requirement refers to the time, place, and circumstances of the injury. ***Id.***; ***Loy v. North Brothers Co.***, 787 S.W.2d 916, 918 (Tenn. 1990). The Tennessee Supreme Court has declared that an injury occurs in the course of employment if the injury occurs while the employee is performing the work he was employed to do. ***Phillips***, 134 S.W.3d at 150. In the instant case, Shearon alleged, and Seaman conceded, that the Decedent suffered his injury while in the course of his employment. The issue then becomes whether the Decedent's injury and death "arose out of" his employment.

The "arising out of" employment requirement relates to the origin of the incident. ***Id***. The question is one of causation. ***Id.*** In ***Phillips v. A&H Construction Company***, the Tennesee Supreme Court provided a workable framework for the analysis:

> An accidental injury arises out of employment when there is apparent
> to the rational mind, upon consideration of all the circumstances, a
> causal connection between the conditions under which the work is
> required to be performed and the resulting injury.

***Id.*** (citing ***GAF Bldg. Materials v. George***, 47 S.W.3d 430, 432 (Tenn. Workers' Comp. Panel 2001)); *see also* ***Hall v. Auburntown Industries, Inc***., 684 S.W.2d 614, 617 (Tenn. 1985). Any reasonable doubt over whether the injury arose out of the employment must be resolved in favor of the employee. ***Phillips***, 134 S.W.3d at 150; ***Hall***, 684 S.W.2d at 617. This does not, however, remove from the claimant the burden of proving each and every element of the cause of action, including causation**. *Kreis, Inc. v. Arons*,** 1997 WL 600071, *3-*4 (Tenn. Sept. 30, 1997) (citing ***Tindall v. Waring Park Ass'n***, 725 S.W.2d 935, 937 (Tenn. 1987)).

When an employee dies from a fall at work which is idiopathic or unexplained in its origin, worker's compensation benefits are normally awarded only where some condition of the employment presents a peculiar or additional hazard. *See* ***Phillips***, 134 S.W.3d at 151 (quoting ***Sudduth v. Williams***, 517 S.W.2d 520, 522-23 (Tenn. 1924)). "The phrases 'arising out of' and 'in the course of' are not synonymous, but rather, embody distinct concepts," and the mere fact that the employee

is at his place of work at the time of the injury, in and of itself, is not sufficient to conclude that the injury arose out of his employment. *Sudduth*, 517 S.W.2d at 523. Where, for example, the employee is injured in an automobile accident after losing consciousness while driving, he may recover worker's compensation benefits if driving a vehicle is part of his job and "driving his vehicle caused or exacerbated his injuries . . . ." *Phillips*, 134 S.W.3d at 152. In contrast, if the employee dies from a heart attack while working, and the heart attack was not brought on by the employee's work or by some happening in the course of his employment, the employee's death is not compensable under the worker's compensation laws. *See King v. Jones Truck Lines*, 814 S.W.2d 23, 27 (Tenn. 1991). Moreover, "compensation will not be awarded where the cause of death is a matter of speculation or conjecture." *Id.* With this standard in mind, we look at the evidence proffered by Shearon in response to Seaman's motion for summary judgment.

Here, it is undisputed that the Decedent died as a result of the head injury, and it is undisputed that it occurred while he was at work. It is also undisputed that the Decedent suffered from heart disease, but there is insufficient evidence to conclude, within a reasonable degree of medical certainty, that the injury was related to Decedent's heart disease. Indeed, there is insufficient evidence from which the trier of fact could determine, within a reasonable degree of medical certainty, *any* cause for the injury. Moreover, there is no evidence that the Decedent's employment presented "a peculiar or additional hazard." *See Phillips*, 134 S.W.3d at 151. This can only be deemed an injury which is idiopathic or unexplained; without more, it is not compensable under the worker's compensation laws. *See id.*

As noted above, in order to succeed against Seaman in her legal malpractice lawsuit, Shearon must show that, but for Seaman's malpractice, she would have obtained relief in her worker's compensation claim. This she cannot do. Under these circumstances, we must conclude that the trial court did not err in granting Seaman's motion for summary judgment. This finding pretermits any other issues raised on appeal.

The decision of the trial court is affirmed. Costs on appeal are assessed to Plaintiff/Appellant Norma E. Shearon, and her surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE