**FILED**

**September 9, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 7:12 AM**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT CHATTANOOGA

| | |
|---|---|
| Richard Lee Wilson,<br>    Employee, | Docket No.: 2016-01-0032 |
| v. | State File No.: 80617-2015 |
| Ryder Logistics,<br>    Employer, | Judge Audrey A. Headrick |
| And | |
| Old Republic Insurance Company,<br>    Carrier. | |

### EXPEDITED HEARING ORDER
### (REVIEW OF THE FILE)

This claim came before the Court upon a Request for Expedited Hearing filed by the employee, Richard Lee Wilson, pursuant to Tennessee Code Annotated section 50-6-239 (2015) for a determination of his entitlement to medical benefits and temporary disability benefits regarding his right knee condition. Mr. Wilson requested that the Court decide this matter upon a review of the file without an evidentiary hearing. Ryder Logistics, the employer, did not object to a review-of-the-file determination. The Court issued its docketing notice on July 19, 2016, and neither party responded.[1] The central legal issue is whether the evidence is sufficient for the Court to determine that Mr. Wilson sustained an injury or aggravation to his pre-existing right knee condition that arose primarily out of and in the course and scope of his employment with Ryder. Secondary issues include whether Mr. Wilson is entitled to reimbursement for medical expenses and temporary disability benefits.

---

[1] However, since Ryder objected in its brief to the Request for Expedited Hearing based upon Mr. Wilson's failure to file a supporting affidavit, the Court set a Show Cause Hearing. The Court granted a brief amount of time for Mr. Wilson to re-file a Request for Expedited Hearing with a supporting affidavit, and Mr. Wilson timely complied with the deadline set forth in the Court's order. The Court further permitted Ryder to file a supplemental response to the new filing if it wished to do so.

This Court finds it needs no additional information to determine whether Mr. Wilson is likely to prevail at a hearing on the merits of the claim.[2] Based upon the record at this time, the Court finds the evidence submitted is sufficient to establish Mr. Wilson is entitled to a panel of physicians from which he may choose an authorized physician for evaluation, and if necessary, treatment of his alleged work-related right knee injury. However, the record is insufficient at this time to establish he is likely to prevail at a hearing on the merits on the issues of reimbursement for medical expenses and temporary disability benefits.[3]

## History of the Claim

On September 5, 2015, Mr. Wilson, a forklift operator for Ryder, was restacking pallets and experienced right-knee pain. (Ex. 1.) In a recorded statement, Mr. Wilson stated his job duties included accurately transferring product; physically loading/unloading trailers; and, moving the product throughout the facility. *Id.* On September 5, 2015, Mr. Wilson bent down to grab a case, put it on the pallet, and immediately started feeling sharp pain in his knee. *Id.* He reported his right-knee pain to Andrew Hannah, his supervisor, who was restacking the pallets with him. *Id.* Later during his shift, Mr. Wilson went to the Coordinator, Aaron Harrison, and told him his knee was "messed up" and hurting. *Id.* Mr. Harrison told him to rest his knee over the long weekend. *Id.*

Mr. Wilson subsequently requested medical treatment, and Ryder authorized him to see Dr. Brian B. Thompson at Blount Memorial Occupational Health. (Ex. 6.) The record reflects that Ryder provided Mr. Wilson with a "Panel of Workers' Comp. Medical Doctors" that is not on the required State form. (Ex. 3.) The "panel" contained a listing of three clinics, which included Blount Memorial Occupational Health. *Id.* There is no other identifying information or signatures contained on the panel. *Id.*

Mr. Wilson first received medical treatment with Dr. Thompson, of Blount Memorial Occupational Health, on September 16, 2015. (Ex. 6.) The office note states Mr. Wilson gave a history of "picking up boxes [on September 5, 2015] when his knee started having sharp pain."[4] *Id.* It also states he "was stationary when the pain started." *Id.* Mr. Wilson gave a history of a past ACL repair to his right knee in 2003. *Id.* In his recorded statement, Mr. Wilson stated he had no problems with his right knee following his ACL repair until the September 5, 2015 incident. Dr. Thompson's differential diagnoses were deep vein thrombosis (DVT) versus neuritis. *Id.* He ordered a right-leg

---

[2] Accordingly, pursuant to Tennessee Code Annotated section 50-6-239(d)(2) (2015), Tennessee Compilation Rules and Regulations 0800-02-21-.14(1)(c) (2015), and Rule 7.02 of the Practices and Procedures of the Court of Workers' Compensation Claims (2015), the Court decides this matter upon a review of the written materials.

[3] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

[4] The Employer's First Report of Work Injury or Illness prepared by Ryder indicates that Mr. Wilson sustained a "strain by lifting." (Ex. 2.)

venous Doppler to rule out a DVT, prescribed Gabapentin for possible neuritis, and restricted Mr. Wilson to no weight-bearing of his right leg and walking only with crutches. *Id.* On the Visit Summary for Employer form, Dr. Thompson checked "Unable to Determine" whether Mr. Wilson's right-knee condition was work-related. *Id.*

After the venous Doppler exam performed later that day was negative for a DVT, Dr. Thompson placed a note in Mr. Wilson's file. *Id.* Dr. Thompson opined that he thought Mr. Wilson's symptoms were "due to a neuritis but I cannot relate that to any on the job injury." *Id.* He further opined Mr. Wilson "should seek care for this from his personal physician." *Id.*

Mr. Wilson's second and last visit with Dr. Thompson was on October 5, 2015. *Id.* He told Dr. Thompson he "[w]ent to Madisonville Primary Care to get FMLA papers filled out" and "[w]as told he needed an MRI," so the "[a]djuster sent him back" to see Dr. Thompson. *Id.* Under Current Work Status, Dr. Thompson's record noted Mr. Wilson was not working. *Id.* Dr. Thompson again stated that Mr. Wilson's diagnosis was not clear and further testing was necessary. *Id.* Although Dr. Thompson noted an MRI of Mr. Wilson's right knee was necessary to determine the cause of Mr. Wilson's symptoms, he stated he still could not "identify a mechanism of injury which would have caused an internal derangement." Regarding medical causation, Dr. Thompson opined that, "[f]urther testing is required before this can be determined with any certainty." Mr. Wilson's work restrictions remained the same. Two days later, Mr. Wilson underwent a right-knee MRI. (Ex. 8.) The MRI indicated no meniscal tears and no significant internal derangement. *Id.*

Mr. Wilson sought emergency treatment at Blount Memorial Hospital on October 11, 2015. (Ex. 5.) He complained of constant pain since hurting his knee at work a month earlier, but the pain increased when bending over to pick something up. *Id.* The physician's assistant diagnosed Mr. Wilson with right knee pain, indicated he could do nothing further for him, and noted he was to "follow-up with his worker's compensation facility" the next day. *Id.*

Instead of returning to see Dr. Thompson, the record reflects that Mr. Wilson subsequently obtained treatment on his own at Ortho Tennessee with Dr. Michael L. Campbell. When Mr. Wilson saw Dr. Campbell on October 22, 2015, he reported, "that Work Comp. has denied coverage for this." (Ex. 7.) He further informed Dr. Campbell that the symptoms began after lifting at work when "he was getting up from a squatting position [and] felt a pop and pain in his knee." *Id.* Mr. Wilson also disclosed his prior right-knee ACL repair. *Id.* Dr. Campbell opined the recent MRI did not reveal any "obvious acute abnormality" or any "evidence of a meniscal tear." *Id.* He diagnosed Mr. Wilson with an internal derangement of his right knee and gave him an injection. *Id.*

Dr. Campbell continued to treat Mr. Wilson conservatively. In addition to prescribing Norco, Dr. Campbell also ordered physical therapy. *Id.* However, after Mr. Wilson failed to respond to conservative treatment, Dr. Campbell recommended that Mr.

3

Wilson undergo a diagnostic arthroscopy with possible partial meniscectomy and chondroplasty. *Id.* The record is silent as to whether Mr. Wilson had the recommended surgery. However, on December 18, 2015, Dr. Campbell responded affirmatively to correspondence from Mr. Wilson's attorney asking whether "[t]he injury to Mr. Wilson on 9/15/15 is work related."

On January 14, 2016, Mr. Wilson filed a Petition for Benefit Determination seeking medical benefits in relation to his right knee condition. On February 8, 2016, Dr. Thompson checked "No" in response to Ryder asking if his "employment contribute[d] more than 50% in causing [Mr. Wilson's] injury or condition."

The parties did not resolve the disputed issues through mediation, and the mediator filed a Dispute Certification Notice on March 11, 2016. On the Dispute Certification Notice, the Mediator listed temporary disability benefits as a disputed issue. However, Ryder timely submitted a list of additional disputed issues including medical benefits, compensability, and the average weekly wage.[5] In response to two Show Cause Hearings, Mr. Wilson filed a Request for Expedited Hearing based upon a review of the file.

Mr. Wilson argued he sustained a compensable right knee injury on September 5, 2015. In support of his contention, Mr. Wilson argued that Dr. Campbell opined his knee injury is work-related. Further, since Ryder did not provide him with a panel of physicians, Mr. Wilson argued that Dr. Campbell's opinion is entitled to the greater weight.

Ryder argued the Court should deny Mr. Wilson's claim based upon the lack of medical proof demonstrating he sustained a work-related right knee injury on September 5, 2015. In its amended response brief, Ryder acknowledged it did not provide Mr. Wilson with a Form C-42 panel of physicians. It candidly admitted that it directed Mr. Wilson to see Dr. Bryan Thompson at Blount Memorial Occupational Health. However, Ryder argued that its failure to provide Mr. Wilson with a panel is not dispositive to the issue before the Court.

Despite the lack of a panel, Ryder contended the Court should not rely on Dr. Campbell's opinion regarding causation because it fails to satisfy the statutory standard required by Tennessee Code Annotated section 50-6-102(14)(B) (2015). Ryder contended the mechanism of injury is inconsistent in the records and is inconsistent with Dr. Campbell's opinion that the injury is "work-related." Further, while pointing out that Mr. Wilson had a pre-existing right knee condition, Ryder argued in its brief that his symptoms "were idiopathic in nature and not associated with any risk or hazard of the employment."

---

[5] The Court agrees with Ryder's assessment that the Mediator inadvertently transposed the average weekly wage and weekly compensation rate on the DCN. The Wage Statement filed indicates the average weekly wage is $674.10, which equates to a weekly compensation rate of $449.42. (Ex. 4.)

## Findings of Fact and Conclusions of Law

Mr. Wilson has the burden of proof on all essential elements of a workers' compensation claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). He is not required to prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, Mr. Wilson has the burden to come forward with sufficient evidence from which the trial court can determine that he is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard does not relieve Mr. Wilson of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, "but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

Ryder asserts Mr. Wilson failed to produce sufficient evidence to show he is likely to prevail on the issue of causation regarding his alleged work-related, right knee injury. In order to establish causation, Mr. Wilson must show, to a reasonable degree of medical certainty, that the incident "contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). Likewise, an aggravation of a pre-existing condition is compensable only if "it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A) (2015). The phrase "reasonable degree of medical certainty" means that, in the opinion of the physician, it is more likely than not considering all causes as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2015).

In this case, the Court finds Mr. Wilson failed to produce sufficient expert medical evidence to establish compensability. Dr. Brian Thompson, who saw Mr. Wilson on two occasions, did not provide a clear diagnosis of Mr. Wilson's right-knee condition. He later opined that Mr. Wilson's condition did not primarily arise out of the course and scope of his employment. However, since Dr. Thompson was not a panel physician, his opinion regarding causation is not entitled to the rebuttable presumption of correctness set forth in Tennessee Code Annotated section 50-6-102(13)(E) (2015). When Mr. Wilson sought treatment on his own with Dr. Michael Campbell, an orthopedic surgeon, Dr. Campbell ultimately diagnosed him with an internal derangement that he opined was work-related and recommended surgery. (Ex. 7.) Although Dr. Campbell responded affirmatively regarding causation, his opinion fails to establish that Mr. Wilson's right knee injury arose primarily out of and in the course and scope of his employment with

5

Ryder. Accordingly, the Court denies Mr. Wilson's request for reimbursement for medical expenses and temporary disability benefits at this time.

Nevertheless, Mr. Wilson is not required at this interlocutory stage to prove compensability in order to establish that Ryder is obligated to provide him with a panel of physicians from which he may choose an authorized physician. *McCord, supra*, at *16-*17. Tennessee Code Annotated section 50-6-204(a)(3)(D)(i) (2015) requires that an "employer shall provide the applicable panel of physicians or chiropractors to the employee in writing on a form prescribed by the bureau, and the employee shall select a physician or chiropractor from the panel, sign and date the completed form, and return the form to the employer." However, as acknowledged by Ryder, it did not offer Mr. Wilson a panel of physicians upon receiving notice from him of his injury.

Although the evidence is insufficient to establish the compensability of Mr. Wilson's claim, the Court finds the evidence is sufficient to support an order compelling Ryder to provide Mr. Wilson with a panel of physicians. Mr. Wilson immediately complained of a work-related right knee injury, and the medical records support his allegation that his right-knee pain began while he performed his job duties on September 15, 2015. Mr. Wilson's job duties as a forklift operator required him to stack pallets, which included physically lifting and stacking cases onto pallets. He stated he had no problems with his right knee following his ACL repair in 2003 until the incident on September 5, 2015, and there is no proof establishing otherwise.

The Court disagrees with Ryder's assertion that there are inconsistences in the mechanism of injury described by Mr. Wilson. In his recorded statement, he said he was restacking the pallets when he immediately started feeling sharp pain in his knee. Mr. Wilson gave a history to Dr. Thompson of "picking up boxes [on September 5, 2015] when his knee started having sharp pain." (Ex. 6.) When he saw Dr. Campbell, he gave a history of lifting at work when "he was getting up from a squatting position felt a pop and pain in his knee." (Ex. 7.) When considering the medical records as a whole as well as Mr. Wilson's recorded statement, the Court finds the histories given by Mr. Wilson are consistent.

The Court also respectfully disagrees with Ryder's assertion that Mr. Wilson's right-knee symptoms "were idiopathic in nature and not associated with any risk or hazard of the employment." "An idiopathic injury is one that has an unexplained origin or cause, and generally does not arise out of the employment unless 'some condition of the employment presents a peculiar or additional hazard.'" *Veler v. Wackenhut Servs.*, No. E2010-00965-WC-R3-WC, 2011 Tenn. LEXIS 78, at *9 (Tenn. Workers' Comp. Panel Jan. 28, 2011) (quoting *Shearon v. Seaman*, 198 S.W.3d 209, 215 (Tenn. Ct. App. 2005)). Ryder focuses on the fact that its own physician, Dr. Thompson, did not identify a cause tied to a hazard of Mr. Wilson's employment. "Cause" in the context of idiopathic injuries means that the accident originated in the hazards to which the

employee was exposed as a result of performing his job duties. *Phillips v. A&H Constr. Co.*, 134 S.W.3d 145, 150 (Tenn. 2004). Accordingly, since physically loading and unloading product was part of Mr. Wilson's job duties, it is a hazard incident to his employment with Ryder.

For the foregoing reasons, the Court finds that Mr. Wilson provided sufficient evidence of entitlement to a panel of physicians to satisfy his burden at this interlocutory stage.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ryder or its workers' compensation carrier shall provide Mr. Wilson with a panel of orthopedic physicians who specialize in knee injuries in compliance with Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) (2015) for evaluation, and if necessary, treatment of his alleged right-knee injury. Mr. Wilson or the providers shall furnish Ryder, or its carrier, bills for the charges incurred for compensable care, and Ryder or its carrier shall timely pay said charges.

2. Mr. Wilson's request for reimbursement of medical benefits and temporary disability benefits is denied at this time.

3. This matter is set for a Status Hearing on November 9, 2016, at 1:00 p.m., ET.

**ENTERED this the 9th day of September, 2016.**

_____
**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

7

Status Hearing:

A Status Hearing has been set on November 9, 2016, at 1:00 p.m. Eastern Time, with **Judge Audrey A. Headrick, Court of Workers' Compensation Claims. You must call 423-634-0164 or toll free at 855-383-0001 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of

the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:

1. Recorded Statement of Richard Lee Wilson
2. First Report of Work Injury
3. Panel of Physicians
4. Wage Statement
5. Medical records of Blount Memorial Hospital
6. Medical records of Dr. Bryan Thompson
7. Medical records of Dr. Michael Campbell
8. MRI performed at Provision Diagnostic Imaging on October 7, 2015
9. Causation Statement of Dr. Bryan Thompson dated February 8, 2016
10. Affidavit of Richard Lee Wilson

Technical record:

1. Petition for Benefit Determination
2. Brief Supporting Petition for Benefit Determination
3. Dispute Certification Notice
4. Show Cause Order
5. Order on Show Cause Hearing
6. Request for Expedited Hearing
7. Employer's Filing of Evidence & Table of Contents
8. Employer's Response Brief to Employee's Expedited Request for Benefits
9. Employer's Amended Response Brief to Employee's Expedited Request for Benefits
10. Docketing Notice for Review of the File Determination
11. Order Denying Request for Expedited Hearing (Review of the File)
12. Affidavit of Richard Wilson
13. Order on Show Cause Hearing
14. Request for Expedited Hearing

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 9th day of September, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Philip R. Strang, Attorney | | | | | X | philipstrang0525@gmail.com |
| Stephen B. Morton, Attorney | | | | | X | stephen.morton@mgclaw.com |

*Penny Shrum*

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

11