IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 5, 2018 Session

## MATTHEW MARBLE v. JAIMEE UNDERWOOD

**Appeal from the Circuit Court for Macon County**
**No. 2015-CV-83      Amy V. Hollars, Judge**

_____

#### No. M2017-02040-COA-R3-CV

_____

This appeal concerns a legal malpractice action filed by the father of a minor child for his attorney's alleged negligence in her representation of him. The court granted summary judgment in favor of the attorney. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S. and RICHARD H. DINKINS, J., joined.

Connie Reguli, Brentwood, Tennessee, for the appellant, Matthew Marble.

Tom Corts and Kobina P. Ankumah, Nashville, Tennessee, for the appellee, Jaimee Underwood.

### OPINION

### I.      BACKGROUND

The Child at issue was born to Aren S. ("Mother") and Mathew Marble ("Father") in August 2012. Father, who was listed on the birth certificate and later signed an acknowledgment of paternity, lived in Michigan, while Mother cared for the Child in Tennessee. The Tennessee Department of Children's Services ("DCS") removed the Child from Mother on June 23, 2013, due to allegations of severe abuse stemming from a head injury the Child received while in Mother's care. Father contacted DCS and advised them of his paternity.

Jaimee Underwood ("Attorney") was appointed to represent Father, who participated in the development of two permanency plans, one on September 9, 2013, and

another on March 4, 2014. Father agreed to the requirements contained in the plans at Attorney's direction, and these plans were ratified by the trial court. Father was required to (1) complete an alcohol and drug assessment and follow recommendations; (2) develop a relapse prevention plan; (3) submit to random drug screens; (4) demonstrate a minimum of six months of sobriety; (5) sign releases of information; (6) discontinue use of illegal drugs and demonstrate correct usage of prescription medication; (7) obtain and maintain suitable housing for six months; (8) contact community resources for help in obtaining housing; (9) remit payment for food and housing utilities on time; (10) have a contingency plan; (11) establish and maintain legal income; (12) notify DCS of changes in employment and provide proof of income; (13) take a parenting class; (14) develop and maintain a relationship with the Child; (15) remit child support; (16) obtain a medical clearance for his seizure disorder; and (17) complete a mental health assessment and follow recommendations.

Meanwhile, a dependency and neglect petition was filed on June 24, 2013, and amended on September 15, 2013. DCS claimed that the Child was dependent and neglected as to Father because he failed to legitimate her and to protect her. Attorney advised Father to stipulate that the Child was dependent and neglected. He did so and also admitted to the court that he did not have stable housing. The Child was adjudicated as dependent and neglected.[1] Attorney then withdrew from her representation in September 2014, and new counsel was appointed to represent Father.

DCS filed a petition to terminate Father's parental rights on September 18, 2014. During the pendency of the termination proceeding, Father hired his current counsel and appealed the dependent and neglect finding to the circuit court. He received a de novo hearing, beginning in April 2015, at which DCS again alleged that Father had failed to legitimate the Child but added a second ground based upon his inability to care for her. After two days of trial, the circuit court entered a stay when DCS advised the court that Father's parental rights had been terminated in a separate action on April 30, 2015.

The de novo trial resumed on January 12, 2016, after our Supreme Court granted Father's application for an extraordinary appeal, vacated the stay, and remanded with instructions to resume the trial. The trial court ultimately ruled that the Child was dependent and neglected as a result of Father's inability to care for her and based upon his severe abuse for his knowing failure to protect her.

Father pursued appeals of the termination decision and the dependency and neglect finding. Both decisions were affirmed on appeal. *In re Hailey S.*, M2015-00842-COA-R3-PT, 2016 WL 3209444, at *10-14 (Tenn. Ct. App. May 31, 2016) (upholding

---

[1] The hearing was held on September 29, 2014; however, the order adjudicating the Child as dependent and neglected was not filed until January 2015.

the termination of his parental rights based upon the statutory grounds of noncompliance with the permanency plan and abandonment for failure to pay child support) ("*Hailey I*"); *In re Hailey S.*, No. M2016-00387-COA-R3-JV, 2016 WL 7048840 (Tenn. Ct. App. Dec. 5, 2016) (upholding the dependency and neglect adjudication) ("*Hailey II*"). Notably, Father claimed in his appeal of the dependency and neglect adjudication that DCS did not make reasonable efforts to assist him as required by the Americans with Disabilities Act ("ADA"). This court held that the ADA does not provide a defense to a dependent and neglect proceeding and only precludes the denial of benefits or services based upon an individual's disability. *Hailey II*, 2016 WL 7048840, at *11. We determined that DCS made reasonable efforts to assist Father, who the circuit court held was not a disabled individual under the meaning of the ADA. *Id.*

During the pendency of both proceedings, Father filed this legal malpractice action on August 24, 2015, in which he claimed, inter alia, that Attorney's negligent representation directly contributed to the loss of his parental rights. He asserted that Attorney failed to acknowledge his limitations and to advocate for him against the imposition of undue and burdensome permanency plan requirements, including the payment of child support and other demands that were clearly beyond his ability to accomplish. He further asserted that she failed to request an individual assessment as required under the Americans with Disabilities Act ("ADA") once she was made aware of his medical and mental limitations. Attorney sought summary judgment, claiming that Father was collaterally estopped from litigating facts decided in the termination and dependency and neglect proceedings, preventing him from establishing a causal link between her alleged negligence and his injury.

The court initially denied summary judgment but later reconsidered its ruling and found that the issues presented were fully adjudicated in the Court of Appeals as evidenced by this court's findings in the termination and dependency and neglect proceedings. The court entered summary judgment in favor of Attorney and stated that this Court had already held (1) that the requirements of the permanency plan were reasonable and related to remedying the conditions that led to removal; (2) that he had willfully abandoned the Child by failing to remit child support, despite his limited education and difficulty in securing employment; and (3) that Father waived any claim related to his ability to parent under the ADA because the issue had not been raised in the termination proceeding. The trial court noted that Plaintiff cannot fault Attorney for the failure to raise his ADA rights because she did not represent him in the termination proceeding.

## II. ISSUE

The sole and dispositive issue on appeal is whether the court erred in granting summary judgment.

## III. STANDARD OF REVIEW

The appropriate summary judgment standard to be applied is as follows:

[W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense.

*Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

"We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness." *Rye*, 477 S.W.3d at 250 (citations omitted). "In doing so, we make a fresh determination of whether the requirements of [Rule 56] have been satisfied." *Id.* (citations omitted). We must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008).

## IV. DISCUSSION

A plaintiff in a legal malpractice action must establish the following elements:

(1) that the accused attorney owed a duty to the plaintiff, (2) that the attorney breached that duty, (3) that the plaintiff suffered damages, (4) that the breach was the cause in fact of the plaintiff's damages, and (5) that the attorney's negligence was the proximate, or legal, cause of the plaintiff's damages.

*Gibson v. Trant*, 58 S.W.3d 103, 108 (Tenn. 2001) (citations omitted); *Shearon v. Seaman*, 198 S.W.3d 209, 214 (Tenn. Ct. App. 2005) (listing the same elements). "In

- 4 -

order to prove damages in a legal malpractice action, a plaintiff must prove that he would have obtained relief in the underlying lawsuit, but for the attorney's malpractice; consequently, the trial of a legal malpractice claim becomes, in effect, a 'trial within a trial.'" *Shearon*, 198 S.W.3d at 214 (quoting *Gibson*, 58 S.W.3d at 108).

Father argues that Attorney's failure to protect his interest in the dependency proceeding was the proximate cause of the initiation of the termination proceeding that resulted in the loss of his parental rights. He further claims that any reliance upon the doctrine of collateral estoppel was misplaced when his loss of his legal right to object to the obligations placed upon him is at issue. He notes that she did not object to the reasonableness of the requirements of the permanency plan or his obligation to remit child support and that she also did not raise any objections on his behalf pursuant to the ADA. Attorney responds that Father cannot prove that her actions or inactions caused his loss of parental rights when the reasonableness of the permanency plan requirements and his ability to remit support were upheld on appeal. Further, this court specifically upheld the trial court's finding that Father was not disabled within the meaning of the ADA and that he was never denied benefits or services based upon any alleged disability.

We agree with Attorney. Father can prove no set of facts establishing that he would have obtained relief in the underlying lawsuit but for Attorney's alleged malpractice. This court specifically held that the requirements contained in the permanency plans were reasonable and that Father was capable of remitting child support but that Father failed to evidence substantial compliance with the permanency plan requirements and did not remit child support as required. *Hailey I*, 2016 WL 3209444, at *10-14. Further, we also upheld the circuit court's determination that Father was not a disabled individual within the meaning of the ADA and that he was not denied benefits or services based upon any alleged disability. *Hailey II*, 2016 WL 7048840, at *11. With these considerations in mind, we uphold the summary judgment dismissal of Father's complaint.

## V.    CONCLUSION

We affirm the decision of the trial court and remand for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Matthew Marble.

_____
JOHN W. McCLARTY, JUDGE