FILED
**Aug 05, 2019**
**09:36 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Aaron Delaney | ) Docket No. 2016-02-0152 |
| | ) |
| v. | ) State File No. 94775-2015 |
| | ) |
| TPI Corporation, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Brian K. Addington, Judge | ) |

---

## Affirmed and Remanded

---

In this interlocutory appeal, the employee alleged suffering a shoulder injury as a result of his efforts to adjust a machine at work. The incident was reported, and the employer initially provided medical care. After the treating physician recommended surgery to repair a torn rotator cuff, the employer denied the claim, asserting the injury was idiopathic. Following a decision on the record in which the trial court denied the employee's requested medical benefits, the employee filed a second request for benefits and for an evidentiary hearing. The employer responded by filing a motion for summary judgment, which the trial court denied. Thereafter, the trial court conducted an evidentiary hearing to address the employee's request for medical and temporary disability benefits. Concluding the employee's work activities presented a hazard that led to his injury, the trial court determined the employee would likely prevail at trial in proving he suffered a work injury causing his need for medical treatment and awarded medical and temporary disability benefits. The employer has appealed. Having carefully reviewed the record, we affirm the trial court's decision and remand the case.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Presiding Judge Marshall L. Davidson, III, and Judge Timothy W. Conner joined.

Cole B. Stinson, Lansing, Michigan, and T. Ryan Malone, Brentwood, Tennessee, for the employer-appellant, TPI Corporation

G. Todd East, Kingsport, Tennessee, for the employee-appellee, Aaron Delaney

**Factual and Procedural Background**

Aaron Delaney ("Employee") is a fifty-one-year-old military veteran who had been employed by TPI Corporation ("Employer") for approximately eight years when he suffered a shoulder injury at work. On November 24, 2015, he was adjusting a machine to run a different product, which required him to maneuver under a bar in a confined space and reach out to manually adjust a stop at the back of the machine. In the process, he experienced sharp pain in his shoulder as well as numbness in his arm, which he reported immediately before going to Employer's first aid facility and speaking with a nurse. Following his discussion with the nurse, Employee returned to work but said he was "hindered" and "not the same man at that point."

The following day, Employee told his supervisor he thought that something was wrong with his shoulder and that he was going to a doctor. The supervisor asked him to wait until the nurse arrived so she could take him to a doctor, and, in the meantime, had him complete an "Employee's Report of Injury Form." Employee wrote on the form that he was "reaching out to touch the mac line with right arm" and indicated he heard his arm pop and felt immediate pain in his shoulder. The nurse took Employee to Medworks Occupational Medicine where he was seen by Dr. E.C. Goulding, III. The initial medical report included a "Patient Description of Accident," which stated Employee "jerked [right] arm away from machine." The report also indicated Employee stated "he was just reaching for the machine and heard a 'pop.'" X-rays did not reveal an abnormality, and Employee was diagnosed as having strained the "muscle(s) and tendon(s) of the rotator cuff" and the "muscle, fascia and tendon at neck level." He was fitted with a shoulder sling and restricted from lifting with his right arm. The report stated "[t]he cause of this problem is related to work activities."

The following week, Employee signed an "Accident Investigation" report describing the incident as follows:

> Employee was making an adjustment on [a] machine. He attempted to reach approximately 30 inches with his right arm. When attempting to reach, he heard a pop in his right shoulder, felt immediate pain and his whole arm went numb.

The next record of Employee's treatment with Dr. Goulding is dated January 5, 2016, at which time Employee reported ongoing intermittent shoulder pain that he said was "made worse by certain movements." The report noted that Dr. Goulding discussed the results of an MRI that had been performed and recommended an orthopedic evaluation. Employee was seen by Dr. Joseph Grant at Watauga Orthopedics on January 19, 2016. The record of that visit noted Employee reported that "while at work and reaching for equipment he heard a pop and felt extreme pain." Dr. Grant discussed the

2

results of Employee's earlier MRI, which revealed a full thickness rotator cuff tear in Employee's right shoulder, and recommended surgery.

On March 22, 2016, Employee filed a petition for medical benefits, stating he had "torn ligaments [and] rotator cuff" but had "no surgical attention." On April 5, 2016, Employer filed a Notice of Denial of Employee's claim, asserting Employee's injury was idiopathic. Thereafter, Employee sought treatment for his shoulder through the Department of Veterans Affairs. Eventually, on April 24, 2017, he underwent arthroscopic surgery performed by Dr. Bert Tagert at the Veterans Administration Medical Center, which included a right biceps tenodesis, supraspinatus repair, and subacromial decompression.

In March 2016, Employee filed a request for an expedited hearing asking for a decision on the record in lieu of the court convening an evidentiary hearing. Thereafter, the parties were advised by the court what records it would review and consider, which included the parties' "Joint Statement of Agreed Facts." In September 2017, the court issued its decision denying Employee's request for benefits based upon its determination that Employee "is not likely to prevail at a hearing on the merits in proving his injury arose primarily from his employment." Specifically, the court determined that, while Employee's injury occurred in the course and scope of his employment, it did not arise out of the employment. Noting Employee "suffered a full thickness rotator cuff tear by merely lifting his arm towards his machine," the court stated that it was "not convinced that simply lifting one's arm at work constitutes a hazard of employment" and that Employee had failed to provide the necessary expert medical proof to support his claim.

Employee subsequently filed a second request for an expedited hearing, this time asking for an evidentiary hearing. The request asserted that additional medical evidence had been obtained indicating Employee's injury resulted from the work incident. The request was supported by Employee's affidavit in which he stated that, as he reached for the back stop on the machine he was adjusting, he "heard a pop [and] immediately saw an air hose that had separated from the coupler and was 'flapping' around." The affidavit stated that when Employee saw the air hose "flapping" around, he "moved [his] right arm from an outstretched position to in front of [his] face to protect [his] face from the flapping hose when [he] felt a 'stabbing' pain in [his] right shoulder as [he] moved [his] arm to protect [his] face."

In response to Employee's request for an evidentiary hearing, Employer filed a motion for summary judgment. Employer asserted the only evidence not previously presented to the court was Employee's own affidavit, which Employer contended included a version of the mechanism of Employee's alleged injury that "contradicts the version he provided the Court during the first expedited hearing." Employer contended Employee's evidence was insufficient to establish that his injury arose primarily out of his employment, which is an essential element of Employee's claim. Responding to

Employer's motion, Employee submitted Dr. Tagert's responses to a questionnaire in which he was asked whether Employee's injury was "the result of a work injury or the result of an idiopathic injury which could have occurred anywhere." Dr. Tagert responded that the injury was "most likely" a work injury, adding, "[f]rom the patient's history, it is most likely from the injury mechanism that he describes." Concluding there was a disputed factual issue concerning whether Employee's injury arose primarily out of the employment, the trial court denied Employer's summary judgment motion and scheduled an evidentiary hearing.

Employer subsequently took Dr. Tagert's deposition, which was admitted in evidence at the evidentiary hearing. Employee provided the only in-person testimony at the hearing. The trial court concluded that Employee was entitled to ongoing medical benefits, that Employer was to schedule a functional capacity evaluation as recommended by Dr. Tagert to assist in determining Employee's impairment, that Dr. Grant was to be the authorized physician because Dr. Tagert was an employee of the Veterans Administration, and that Employee was entitled to an award of past temporary total disability benefits. Specifically, the court concluded that both Dr. Grant and Dr. Tagert determined Employee suffered an injury at work that caused the need for medical treatment; that Employee's work "caused a hazard that led to his injury"; and that Employee was "likely to succeed in proving he suffered a work injury that caused disablement and the need for medical treatment." Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2018). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2018).

4

**Analysis**

Employer identifies several issues on appeal, which we have consolidated and restated as follows: (1) whether the trial judge erred in finding Employee's testimony to be credible; (2) whether the trial judge erred in concluding Employee's injury was not an idiopathic injury; (3) whether the trial judge erred in awarding temporary disability benefits; and (4) whether the trial judge erred in ordering Employer to provide the functional capacity evaluation recommended by Dr. Tagert.

*The Trial Judge's Credibility Determination*

Employer contends the trial court erred in finding the version of the incident to which Employee testified at the evidentiary hearing to be credible. It asserts that "[f]or roughly two years, [Employee] consistently told one version of events regarding how his injury occurred – that he was reaching out with his arm to touch his machine when he heard a pop in his shoulder and felt pain." Employer emphasizes that Employee reported "this story" to Employer on the day following the injury, repeated it to Employer one week later, told three different medical providers the same story, and consented to a joint stipulation of agreed facts in the initial expedited hearing that described the event as "reaching out to touch the 'mac-line' machine with his right arm when he felt and heard a pop in his right shoulder." Then, according to Employer, after being denied benefits following the court's decision on the record, Employee began telling a different story, contending the injury occurred "when he moved his arm defensively to protect his face from a hose that had become disconnected and was moving like a whip."

Following the evidentiary hearing, the trial court found that Employee "provided credible testimony explaining the tight quarters in which he worked, the length he reached to adjust the machine, and jerking his arm to shield his face." Noting that Employee did not mention the jerking motion in his injury report to Employer, the court stated Employee "provided a reasonable excuse, in that [Employer] only asked him which job duty he was performing at the time of injury." Further, the court added that Employee "told the providers at MedWorks and Dr. Tagert that he jerked his arm."

Indeed, the report of Employee's examination by Dr. Goulding the day after the work incident included a "Patient Description of Accident" that stated Employee "jerked [right] arm away from machine," which is consistent with the testimony given by Employee at the evidentiary hearing. The report does, however, indicate Employee "[s]tates he was just reaching for the machine and heard a 'pop.'" Moreover, the report of Employee's June 16, 2016 examination at the Veterans Administration medical facility, which occurred more than a year before the initial expedited hearing, states Employee "jerked his arm from his machine in Nov[ember] and had a sharp pain." Dr. Tagert was asked to read the description of the work incident that was in the transcript of Employee's deposition in which Employee stated he "moved [his] right arm from the

5

outstretched position to in front of [his] face to protect [his] face from the flapping hose when [he] felt a stabbing pain in [his] right shoulder as [he] moved [his] arm to protect [his] face." Dr. Tagert said he did not record the details of the description that Employee provided to him, but that the description in Employee's deposition was consistent with what Employee had told him. He further testified:

> [T]he cuff tear was something we found at surgery that was . . . a little bit of a surprise, because we were expecting this to be more biceps and . . . [w]hether [the rotator cuff tear] was involved as part of his injury or not would be a little bit debatable, but the mechanism of a sudden jerking motion of the arm is consistent with an injury to the labrum or cartilage.

As previously noted, when the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). In addition, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7). Having reviewed the evidence in light of the deference to be accorded the trial court's credibility determinations accompanied by the medical proof, we discern no error in the court's conclusion that Employee provided credible testimony explaining the work incident.

*Idiopathic Injury*

Employer asserts Employee is not entitled to workers' compensation benefits because his injury was idiopathic in nature. "An idiopathic injury is one that has an unexplained origin or cause, and generally does not arise out of the employment unless 'some condition of the employment presents a peculiar or additional hazard.'" *Veler v. Wackenhut Servs.*, No. E2010-00965-WC-R3-WC, 2011 Tenn. LEXIS 78, at *9 (Tenn. Workers' Comp. Panel Jan. 28, 2011) (quoting *Shearon v. Seaman*, 198 S.W.3d 209, 215 (Tenn. Ct. App. 2005)).

Employer's assertion that Employee's shoulder injury is idiopathic and, therefore, not compensable, is premised on what Employer identifies as Employee's "original" description of the incident resulting in his injury. Employer refers to the parties' Joint Statement of Agreed Facts that was submitted to the trial court for purposes of its decision on the record, which stated Employee "was reaching out to touch the 'mac-line' machine with his right arm when he felt and heard a 'pop' in his right shoulder." As noted above, Employer emphasizes that Employee described the incident to Employer in this manner on the day following the injury, repeated a similar description to Employer one week later, and told his medical providers essentially this same version of the incident. Citing the trial court's statement in its initial order that "the Court is not

convinced that simply lifting one's arm at work constitutes a hazard of employment," Employer contends that Employee's injury is idiopathic. However, as also noted above, the trial court found Employee's subsequent testimony at the evidentiary hearing "explaining the tight quarters in which he worked, the length he reached to adjust the machine, and jerking his arm to shield his face" to be credible testimony. Based upon that testimony, the trial court determined Employee's work activities presented a hazard that led to his injury. As a result of our resolution of Employer's first issue questioning the trial court's credibility determination, we find no merit in Employer's argument that the trial court erred in concluding the injury was not idiopathic.

*Award of Temporary Disability Benefits*

Employer next contends the trial court erred in awarding Employee temporary disability benefits. It argues Employee failed to establish the duration of his disability, one of the requirements for establishing entitlement to temporary disability benefits.[1] Specifically, Employer asserts that Employee's testimony was "internally inconsistent regarding the months he missed work" in that both he and his attorney "were confused regarding the year in which [Employee] missed work." In essence, Employee testified he missed work from April 24, 2016 until September 11, 2016, although his surgery was not until April 24, 2017. In addition, Employer points to Employee's testimony that he did not miss work as a result of his injury until August 24, 2016 as evidencing the inconsistency in Employee's testimony.

The trial court awarded temporary total disability benefits from the date of Employee's surgery, April 24, 2017, until September 11, 2017, stating that "Dr. Tagert took [Employee] off work from April 24 until September 11, 2017, because of his work-related surgery." The court expressly found that Employee was "totally disabled from work between those dates" and that Employee was "entitled to temporary total disability benefits" for that time period. Consistent with the medical records admitted in evidence, Dr. Tagert testified he performed shoulder surgery on April 24, 2017, and that he saw Employee on August 1, 2017, at which time he "gave [Employee] a release at that appointment estimating that on 9/11/2017 . . . he would be released without restrictions." It is clear from the record that Employee was claiming entitlement to temporary disability benefits for the time period beginning with the date of his surgery and ending on the date Dr. Tagert released him to return to work. When asked "from the time [Dr. Tagert] performed surgery on you until you were released to return to work, did you work at all," he responded "no." Employee's testimony that he did not miss any work before August 24, 2016 was unrefuted, except for his own testimony when he spoke to the wrong year. Considering the entire record, we have no difficulty concluding the trial court did not err

---

[1] To demonstrate entitlement to temporary total disability benefits, an injured worker "must prove (1) total disability to work by compensable injury; (2) a causal connection between the injury and the inability to work; and (3) duration of the disability." *Foreman v. Automatic Sys.*, 272 S.W.3d 560 (Tenn. 2008) (*citing Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978)).

7

in determining Employee would likely prevail at trial in establishing entitlement to temporary total disability benefits for the time period between his surgery and the date Dr. Tagert released him to return to work.

*Functional Capacity Evaluation*

Employer's final argument asserts the trial court erred in ordering Employer to pay for a functional capacity evaluation ("FCE") recommended by Dr. Tagert. Noting the trial court's reference to Dr. Tagert as "an unauthorized physician" and its determination that "Dr. Grant shall be the authorized physician for future treatment," Employer asserts "it is an abuse of discretion to also order [Employer] to pay for the FCE."

As noted by the trial court, even though the authorized physician, Dr. Grant, indicated Employee needed shoulder surgery, Employer denied the claim, "which forced [Employee] to seek treatment on his own." He chose to treat with Dr. Tagert, a board-certified orthopedic surgeon who worked at the Mountain Home Veterans Administration Medical Center in Johnson City, Tennessee. Dr. Tagert testified he began treating Employee on June 27, 2016, and that he performed shoulder surgery on April 24, 2017. Stating that an employer "risks being required to pay for unauthorized treatment if it does not provide treatment made reasonably necessary by the work injury," the trial court concluded "Dr. Tagert's treatment [was] necessary and reasonable, as both doctors [Drs. Grant and Tagert] recommended the surgery." However, because Dr. Tagert is employed by the Veterans Administration, the court determined that Dr. Grant would be the authorized physician for future treatment.[2]

Dr. Tagert testified he last saw Employee on December 8, 2017, and that Employee was not at maximum medical improvement at that time. He testified he "probably would have requested [an FCE] and . . . considered . . . a permanent rating shortly after that," adding that "the FCE gives you more reliable information . . . and so most of the time in this situation I will request one." In addition, when asked whether Employee would have restrictions, Dr. Tagert indicated he did not think so, stating "but again not having the support of an FCE and not seeing him after the estimated [maximum medical improvement] time, it would be hard for me to say."

An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). It reflects awareness that the discretionary decision involved a choice among acceptable alternatives and does not

---

[2] Employee has not raised an issue concerning the appointment of Dr. Grant rather than Dr. Tagert as the authorized treating physician for future treatment. Thus, we do not address the issue except as necessary to address Employer's assertion that the trial court abused its discretion in ordering it to provide the FCE recommended by Dr. Tagert.

permit reviewing courts to substitute their discretion. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Pursuant to this standard, "the appellate court should presume the decision is correct and should review the evidence in the light most favorable to the decision." *Gonsewski*, 350 S.W.3d at 105-06.

Here, Employer fails to identify where the trial court allegedly strayed beyond the appropriate legal standard or how it failed to properly consider the factors customarily used to guide its discretionary decisions. *See Lee Med., Inc.*, 312 S.W.3d at 524. Employer asserts it is "aware of no legal authority authorizing the trial court to simultaneously order that (1) Dr. Tagert will not be the one treating [Employee] going forward and yet (2) the evaluation Dr. Tagert requested to assist in his assessment of [Employee] must be performed." It argues there is no reasonable basis for such order because "[t]he need for Dr. Tagert's FCE was rendered moot when the court named Dr. Grant the authorized physician." Although not phrasing its argument as such, we understand Employer is asserting the trial court reached an illogical result or relied on reasoning that causes an injustice. We disagree.

Upon Employer's denial of the claim, Dr. Tagert became Employee's treating physician. Dr. Tagert recommended the FCE to assist him in addressing Employee's impairment and restrictions, as opposed to determining the course of future treatment. The workers' compensation law contemplates that impairment ratings will be assigned by treating physicians. *See* Tenn. Code Ann. § 50-6-204(k). Simply because the trial court determined that Dr. Grant would be the authorized physician for future treatment, it does not follow that Dr. Tagert was not the treating physician for the period he actually treated Employee following Employer's denial of the claim. His recommendation for an FCE was not expressed to be necessary for future treatment; rather, the purpose was to assist him in evaluation of Employee's impairment and restrictions resulting from the injury for which he performed surgery. Reviewing the trial court's decision in the light most favorable to the decision, we conclude the trial court did not abuse its discretion in ordering Employer to pay for the recommended FCE.

**Conclusion**

For the foregoing reasons, we affirm the trial court's May 14, 2019 expedited hearing order and remand the case. Costs of this appeal are taxed to Employer.

9



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| Aaron Delaney | ) | Docket No. 2016-02-0152 |
| | ) | |
| v. | ) | State File No. 94775-2015 |
| | ) | |
| TPI Corporation, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Brian K. Addington, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 5th day of August, 2019.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Sent to: |
|---|---|---|---|---|---|---|
| George T. East | | | | | X | todd@toddeast.com jennifer@toddeast.com |
| T. Ryan Malone | | | | | X | ryan@petersonwhite.com |
| Cole Stinson | | | | | X | cole.stinson@accidentfund.com |
| Brian K. Addington, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov